IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIANNA WILKERSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00222-JRG |
| | § | |
| SABINE VALLEY REGIONAL MHMR | § | |
| CENTER D/B/A COMMUNITY | § | |
| HEALTHCORE, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Before the Court is Defendant Sabine Valley Regional MHMR Center d/b/a Community Healthcore's ("Defendant" or the "Center") Motion to Dismiss or, in the Alternative, to Stay the Action and to Compel Arbitration (the "Motion"). (Dkt. No. 4.) In the Motion, Defendant moves to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) or, in the alternative, to stay the action and to compel arbitration of all asserted claims. (*Id.* at 1.)

Having considered the Motion, the related briefing, and relevant authorities, the Court finds that the Motion should be and hereby is **GRANTED-IN-PART** such that this proceeding is **STAYED** pending the outcome of an arbitrator's decision on the issue of arbitrability of Plaintiff's claims. The parties are **ORDERED** to notify the Court within forty-eight (48) hours of the arbitrator's decision on arbitrability.

### I.  BACKGROUND

Plaintiff Dianna Wilkerson ("Plaintiff" or "Wilkerson") entered into employment with the Center in July 2018. (Dkt. No. 8-5 at ¶ 1.) Since at least as early as November 1, 2016, the Center has had a policy of resolving disputes between the Center and its employees by "final, mandatory,

binding arbitration." (Dkt. No. 6-1 at ¶ 3; Dkt. No. 6-2; Dkt. No. 6-3.) As a part of Wilkerson's onboarding, she was presented with an At-Will Employee Agreement (the "Agreement") that contained a section titled "Section Three—Arbitration Required for All Disputes.") (Dkt. No. 6-3 at ¶ 3.1.) According to the Center's employee records, Wilkerson acknowledged the Agreement and affixed her electronic signature to it on July 17, 2018. (Dkt. No. 6-1 at ¶ 8; Dkt. No. 6-6 at 6–7.) Wilkerson does not deny the existence or authenticity of the Agreement, but alleges she does not "remember ever seeing or signing the arbitration agreement in 2018." (Dkt. No. 8-5 at ¶ 3.)

Plaintiff sued Defendant on June 21, 2022 alleging violations of the Fair Labor Standards Act ("FLSA") for failing to pay her for all time worked, as well as for retaliatory termination for complaining that she was not being paid correctly. (Dkt. No. 1 at ¶¶ 1, 49, 51–52.) In response to Plaintiff's Complaint, on July 27, 2022, Defendant filed its Motion requesting that the Court dismiss this action or, in the alternative, stay the action and compel arbitration. (Dkt. No. 4 at 1.)

Defendant contends that all the claims asserted in Plaintiff's Complaint are expressly within the scope of the parties' arbitration agreement (i.e., the Agreement entered into when Plaintiff began her employment). (Dkt. No. 4 at 1–2.) Under the Agreement, Plaintiff agreed to resolve any disputes between her and the Center through arbitration, and Plaintiff's claims in this action arise out of, or are in connection with, her employment by the Center and thus should be resolved by an arbitrator. (*Id.* at 3.) Moreover, the parties agreed to delegate the question of arbitrability of Plaintiff's claims to an arbitrator. (*Id.* at 5.)

Plaintiff alleges that the Agreement itself is unconscionable and unenforceable as such. (Dkt. No. 5 at 3.)

## II.  LEGAL STANDARD

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524,

529 (2019).  "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Id.*  The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Id.* at 530.  An arbitration agreement that incorporates the American Arbitration Association ("AAA") Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Further, "this circuit recognizes that district courts have discretion to dismiss with prejudice rather than stay litigation pending arbitration."  *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 n.1 (5th Cir. 2019).  Dismissal is proper "when all of the issues raised in the district court must be submitted to arbitration."  *Adam Techs. Int'l, S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013).  As a corollary, when it cannot be said that all of the issues raised in the district court must be submitted to arbitration, dismissal is not appropriate.

### III. DISCUSSION

The first step for the Court is to determine the threshold issue of whether the parties delegated arbitrability of their dispute to an arbitrator.  The answer is unambiguously yes.

The Agreement here includes a delegation clause (i.e., Section Three of the Agreement) that evinces an intent to have the arbitrator decide whether a claim must be arbitrated.  *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).  The clause states that "[a]ny controversy or dispute between Employee and the Center . . . arising from or in any way related to Employee's employment by the Center, or the termination thereof, including but not limited to the construction or application of this Agreement, shall be resolved exclusively by final and binding arbitration self-administered by the parties thereto under the Expedited Rules for Employment Arbitration promulgated by the American Arbitration Association ('AAA') . . . ."  (Dkt. No. 4-2

at ¶ 3.1.)  This persuades the Court that the intent of the parties was to submit the issue of arbitrability to an arbitrator rather than the Court.  This conclusion is supported by "clear and unmistakable evidence."  *Archer & White Sales*, *Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019).  If there were any doubt, the Agreement also states that "[i]t is the intent of the parties hereto that all disputes between them must be arbitrated, expressly including . . . the extent of arbitrability of any claim . . . ."  (Dkt. No. 4-2 at ¶ 3.1.)  Furthermore, the Agreement incorporates the AAA rules, which is another separate basis to find "clear and unmistakable evidence that the parties to the [] Agreement agreed to arbitrate arbitrability."  *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014).

Plaintiff has failed to demonstrate that the Agreement and its delegation of arbitrability to an arbitrator is invalid based upon unconscionability.  The parties do not dispute that Texas contract law applies to the Agreement.  Defendant argues that the Agreement was signed by both parties in Texas and is valid under ordinary contract principles.  *See Fleetwood Enters. Inc v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).  Under Texas law, agreements to arbitrate, as with any other contract, are valid unless grounds exist at law or in equity for revocation, and the burden to prove such ground (e.g., unconscionability) is on the party opposing the contract.  *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  Plaintiff has not met that burden in this case.

Plaintiff makes a number of unconvincing arguments, for example arguing that allowing Defendant to select the arbitrator is unconscionable as a matter of law. (Dkt. No. 5 at 3.)  However, Defendant points out that the Agreement provides Plaintiff with the choice of arbitrator from a list of at least three arbitration neutrals maintained by the Center. (Dkt. No. 6 at 6.)  This is consistent with the AAA Rules, which require any arbitrator to be impartial and independent, and Plaintiff

cites no authority to support the notion that selecting an arbitrator from a list such as this is unconscionable.

Plaintiff next argues that the Agreement is silent as to whether the arbitrator will make any written opinions or explanations of any award. (Dkt. No. 5 at 4.) Again, Defendant points out that the Agreement expressly states that the arbitration will be held in accordance with the AAA, which requires there to be "written reasons for the award unless the parties agree otherwise." (Dkt. No. 6 at 10.)

Plaintiff also argues that the Agreement reflects a very limited amount of discovery, and Plaintiff would not be able to ascertain her full amount of damages thereunder. (Dkt. No. 5 at 5.) Defendant notes that the Agreement provides the parties an equal amount of time and discovery once the arbitration proceedings are initiated. (Dkt. No. 6 at 7.) Furthermore, the Court notes that the Defendant is and has been subject to the Texas Public Information Act, and Plaintiff has already availed herself of such to obtain discovery from the Center before filing suit. Plaintiff has, prior to filing suit, requested information (26 categories of documents relating to her FLSA claim) that Defendant voluntarily provided (approximately 425 separate files, making up 48 MB of data). (*Id.* at 7–8.)

Plaintiff argues that the Agreement could impose Defendant's fees and costs on Plaintiff, which is not allowed under the FLSA. (Dkt. No. 5 at 7.) Plaintiff complains that she would not be able to afford to maintain her lawsuit if forced to submit to arbitration. Defendant points out that the Agreement specifies that any arbitration award will be made in accordance with the law controlling the dispute at issue, and any imposition of the other side's fees and costs would be made "in proportion to [the arbitrator's] award." (Dkt. No. 6 at 11.) Additionally, such fees are limited to those "incurred in the enforcement" of the Agreement. This provision simply governs

5

the allocations of costs and fees related to a party seeking to avoid or enforce compliance with the Agreement itself. Further still, Defendant notes that Plaintiff's argument that she "has no knowledge of what might be expected of her" if she were to submit to arbitration is not evidence of unconscionability. (*Id.* at 12–13.)

Finally, Plaintiff argues that arbitration provisions, as in the Agreement, are not enforceable when a party is forced to forgo the substantive rights afforded by a statute, such as an award of attorneys' fees for prevailing plaintiffs in FLSA actions, which is mandatory. (Dkt. No. 5 at 8.) In reply, Defendant notes that the Agreement states that the arbitrator may grant any relief that could be granted by a court of competent jurisdiction, and thus, if Plaintiff were to prevail, the arbitrator could allocate all of the cost on Defendant. (Dkt. No. 6 at 10–11.)

Plaintiff argues unconscionability of the entire Agreement. However, Plaintiff falls far short of meeting the bar required to defeat enforcement of this arbitration agreement on that basis. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("This bar is high even where, as here [under the FLSA], the claims subject to arbitration are statutory in nature.") Notably, Plaintiff does not contest the delegation of the question of arbitrability to an arbitrator.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** Defendant's Motion to Dismiss or, in the Alternative, to Stay the Action and to Compel Arbitration (Dkt. No. 4) by ordering that this action be **STAYED** pending a decision by a duly selected arbitrator as to the issue of arbitrability. The parties are hereby **ORDERED** to submit the question of arbitrability of Plaintiff's claims pursuant to the terms of the Agreement. The parties are also directed to promptly notify the Court by a joint Notice filed herein within forty-eight (48) hours of such decision being announced by the arbitrator. The Court reserves the right to subsequently address this action in light of the arbitrator's decision regarding arbitrability.

## So Ordered this

**Jan 4, 2023**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE